UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LASHAUNDRA LIPSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-680-RLB** |
| **EAST BATON ROUGE PARISH SCHOOL BOARD, ET AL.** | **CONSENT** |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Before the court is a Motion to Dismiss And/Or, Alternatively, For Summary Judgment filed by Defendant East Baton Rouge Parish School Board ("School Board"). (R. Doc. 26). The School Board seeks dismissal of the claims brought in the First Amended Complaint (R. Doc. 25) filed by Plaintiff Lashaundra Lipsey ("Plaintiff"). The School Board incorporates arguments made in support of an earlier Motion to Dismiss and/or for Summary Judgment directed at Plaintiff's original Complaint. (R. Doc. 8). Plaintiff opposes the Motion. (R. Doc. 29). The School Board has filed a Reply. (R. Doc. 33).

I.   **Procedural History and Background**

On October 28, 2014, Plaintiff filed her initial Complaint against the School Board and the individual defendant Nerelyn Soreta, a teacher at Jefferson Terrace Elementary and employee of the School Board, seeking recovery from the School Board for constitutional violations made actionable by 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and state law tort claims. (R. Doc. 1). In short, Plaintiff alleged that her special needs daughter was abused by Ms. Soreta, the

1

abuse was captured on video tape, and the principal did not take immediate action to remove Ms. Soreta from the class room upon seeing the videotape or after receiving any previous reports of abuse.

On February 16, 2015, the School Board moved for dismissal of the Complaint pursuant to Rules 12(b)(6) and 12(d) of the Federal Rules of Civil Procedure. (R. Doc. 8). The School Board argued that it is not vicariously liable for Ms. Soreta's acts pursuant to § 1983, and can only be sued if the alleged deprivation of the Plaintiff's rights stems from "unconstitutional or illegal policies." (R. Doc. 8-1 at 7). The School Board further argued that Plaintiff had not alleged that the School Board acted with "deliberate indifference" to her daughter's rights, and, therefore, Plaintiff could not recover pursuant to the ADA or RA. (R. Doc. 8-1 at 8-11).

On March 12, 2015, Plaintiff moved for leave to file an Amended Complaint. (R. Doc. 18). Plaintiff represented that the "new complaint maintains most of the allegations against the same defendants from the original complaint, but more specifically alleges facts in more detail to state a claim upon which relief can be given and that state disputed factual issues." (R. Doc. 18 at 1). The Court granted the Motion, and Plaintiff's First Amended Original Complaint (R. Doc. 25, "Amended Complaint") was entered into the record on April 7, 2015.

In the Amended Complaint, Plaintiff alleges that her daughter, C.L., is a nine year old wheel chair bound special needs student with cerebral palsy who attended Jefferson Terrace Elementary. (Amended Complaint, ¶ 3). Plaintiff alleges that on Thursday, October 31, 2013, she received a call at 10:00 a.m. from a bus driver aid informing her that there "was a video of [C.L.] being hit by her teacher," and that Ms. Soreta "pushed her head initially" and then "[a]fter about a minute, she pushed her head backwards and smacked her on the leg twice." (Amended Complaint, ¶ 4). Plaintiff alleges that she was also informed that her daughter "would be tied to the file cabinet in a chair and left sitting for hours and that Mrs. Soreta often hits the children

2

with an orange plastic bat, and verbally abuses them calling them 'nasty' and 'full of bacteria' and that these events had been previously reported to the principal to no avail." (Amended Complaint, ¶ 4). Plaintiff alleges that "[t]he the abuse suffered by [C.L.] and the other special needs children had been going on for quite some time such that another teacher or aid had reported it to the principal but was rebuffed by the principal and told that as long as it doesn't happen in your class mind your own business." (Amended Complaint, ¶ 8). Plaintiff alleges that '[i]t was the indifference of the school officials that led the [other] teacher to finally video tape the abuse and give it to [Plaintiff]." (Amended Complaint, ¶ 8).

Plaintiff alleges that she received a call from Ms. Chatman, the district's special education director with the Center for Exceptional Student Services, who discussed the alleged abuse with Plaintiff and informed her that "the incident would be reported to Human Resources and that she would have Ms. Soreta removed from the classroom that day, that an investigation would have to be conducted and that they would move forward from there." (Amended Complaint, ¶ 6). Plaintiff alleges that, in contrast, the school principal informed her "that she was not going to send anyone from her school anywhere until she conducted her own investigation notwithstanding the fact that the series of incidents in the class had been previously reported to her and nothing had been done about it." (Amended Complaint, ¶ 6). Plaintiff alleges that "[a]fter learning that no action had previously been taken against the school teacher" she pressed criminal charges against Ms. Soreta. (Amended Complaint, ¶ 6).

Plaintiff alleges that after the principal had an opportunity to watch the video, "she left Ms. Soreta in the classroom with other students, ignoring Ms. Chatman's order to send her to central office." (Amended Complaint, ¶ 7). Plaintiff alleges that a mother of another student informed her that Ms. Soreta was back in the classroom on Friday, November 1, 2013, and at that point, Plaintiff "decided to call the news station to report the story to them because the

school seemed to be indifferent to what was going on." (Amended Complaint, ¶ 7). Plaintiff alleges that "[o]nly after the news informed them that the story would be aired on the evening news did the school board decide to do anything," and at 5:00 p.m. that evening, she was contacted by the superintendent who informed her that C.L. would be placed in a new school on Monday, November 4, 2013. (Amended Complaint, ¶ 7).

As in the original Complaint, Plaintiff alleges that the School Board is liable for constitutional violations pursuant to 42 U.S.C. § 1983, disability-based discrimination under the RA and the ADA, violations of state tort law. (Amended Complaint, ¶¶ 15-17). Plaintiff alleges that her child was "discriminated against because her cerebral palsy and behavior of appearing listless and inattentive in her wheel chair" which led to Ms. Soreta to turn to "slapping her back and forth and tying her to a filing cabinet and calling her names, subjecting her to ridicule" unlike other children without cerebral palsy. (Amended Complaint, ¶ 13). Plaintiff alleges that the School Board hired "untrained teachers from abroad who were not adequately experienced in dealing with students" such as C.L. (Amended Complaint, ¶ 14). Plaintiff alleges that "[h]ad prompt action been taken by the school, the injuries to [C.L.] would not have been as severe." (Amended Complaint, ¶14). Plaintiff alleges that the School Board is "liable for damages stemming from the enforcement of its non-corporal punishment policy, practice, and/or custom." (Amended Complaint, ¶17).

On April 20, 2015, the School Board filed the instant Motion seeking dismissal of the First Amended Complaint pursuant to Rules 12(b)(6) and 12(d) of the Federal Rules of Civil Procedure. (R. Doc. 26). The School Board argues that the Amended Complaint failed to resolve the defects of the original Complaint as set forth in the School Board's original Motion. (R. Doc. 26-1 at 1-2). The School Board argues that Plaintiff has failed to state a constitutional claim against the School Board because the "Amended Complaint remains void of any allegation that

4

Ms. Soreta's alleged actions were in accordance with any School Board policy, procedure or custom which violated [Plaintiff's] or [C.L.'s] civil rights." (R. Doc. 26-1 at 5-6). The School Board further argues that the additional allegations concerning the alleged previous abuse of C.L. and other special needs children are conclusory, and that Plaintiff "fails to indicate when the School Board allegedly became aware of such acts, or that once the School Board was aware of the alleged acts that they failed to take timely or appropriate action." (R. Doc. 26-1 at 6).

In Opposition, Plaintiff argues that her allegations regarding the reports of another teacher of similar past abuse, which was allegedly ignored by the principal and School Board until news reports surfaced regarding the video, are sufficient to state a claim of deliberate indifference under Section 1983. (R. Doc. 29 at 4-5). Plaintiff also argues that Ms. Soreta acted with intentional discrimination against C.L., for which the School Board may be held vicariously liable under the RA and the ADA. (R. Doc. 29 at 2-4).

## II.  APPLICABLE LAW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed

to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

If "matters outside the pleadings are presented to and not excluded by the court" in connection with a Rule 12(b)(6) motion, Rule 12(d) instructs the Court to treat the motion as "one for summary judgment under Rule 56." Here, Defendant has presented evidence outside of the pleadings along with its Motion to Dismiss. Because this evidence is not considered by the Court in connection with the instant Motion, the Court treats the instant Motion solely as one to dismiss under Rule 12(b)(6).

### A.     Americans with Disabilities Act and the Rehabilitation Act

Plaintiff alleges that the School Board intentionally discriminated against her minor child based on her disability, in violation Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and § 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

The ADA is designed to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002). The RA was similarly enacted to "ensure that handicapped individuals are not denied . . . benefits because of the prejudiced attitudes or ignorance of others." *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988). Because the "remedies, procedures, and rights set forth in the [RA]" are the same as those available under the ADA, 42 U.S.C. § 12133, "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). "A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a

showing of intentional discrimination" *Delano-Pyle*., 302 F.3d at 574 (citing *Carter v. Orleans Parish Pub. Sch.,* 725 F.2d 261, 264 (5th Cir. 1984)).[1]

Title II of the ADA makes it unlawful for a public entity to discriminate against a "qualified individual with a disability." 42 U.S.C. § 12132.  To establish a prima facie violation of the ADA, a plaintiff must show that he or she (1) was disabled within the meaning of the Act, (2) and qualified to receive the services or benefits of the public entity, (3) but was excluded from those benefits (or otherwise discriminated against) because of his or her disability. 42 U.S.C. §§ 12131, 12132; *Rideau v. Keller Independent Sch. District*, 978 F. Supp. 2d 678, 682 (N.D. Tex. 2013).  Unlike 42 U.S.C. § 1983, a municipal public entity, like a school district, may be held liable for the "vicarious acts of *any* of its employees." *Delano-Pyle*, 302 F.3d at 574-75 ("neither a policy maker, nor an official policy must be identified" under the ADA); *cf. Connick v. Thompson*, 563 U.S. 51 (2011) (Municipalities "are not vicariously liable under § 1983 for their employees' actions.").

Assuming the allegations made in the Complaint are true, the Court finds that Plaintiff has stated a cause of action under both the ADA and the RA.  First, Plaintiff's daughter allegedly suffers from cerebral palsy, which meets the statutory definition of disability under the ADA. 28 C.F.R. § 35.104(1)(ii) ("The phrase physical or mental impairment includes . . . such contagious and noncontagious diseases and conditions as . . .  cerebral palsy . . . .").  Plaintiff's daughter was likewise qualified under the ADA as the allegations indicate she was already participating in the services offered by the public entity — i.e. she was attending school.  And finally, Plaintiff has

---

[1] Plaintiff specifically states that her "deliberate indifference" claims are based on the ADA and RA. (Amended Complaint, ¶ 4).  In the Fifth Circuit, "[t]here is no 'deliberate indifference' standard applicable to public entities for purposes of the ADA or the RA." *Delano-Pyle*, 302 F.3d at 575.  Because Plaintiff also references the alleged "indifference" of the School Board in the context of her Section 1983 claim, the court will consider the allegations of "deliberate indifference" in that context.

sufficiently alleged that her daughter was discriminated against, because of her disability, in a manner that denied her the benefits and services offered by the school district.

For example, Plaintiff alleges that a video shows the teacher "push[ing]" her daughter's head backwards and then hitting her on the leg. (Amended Complaint, ¶ 4). Plaintiff also claims that her daughter "would be tied to the file cabinet in a chair and left for hours." (Amended Complaint, ¶ 4). Plaintiff further claims that "for quite some time" the teacher abused Plaintiff's daughter and other disabled children, hitting them with a plastic bat and "calling them 'nasty' and 'full of bacteria.'" (Amended Complaint, ¶¶ 4, 8). These factual allegations support a claim for intentional discrimination. *See Rideau*, 978 F. Supp. 2d at 683 (allegations that teacher was physically abusive, "forceful" and "impatient" with disabled plaintiff and other disabled students was evidence of intentional disability-based discrimination); *Delano-Pyle*, 302 F.3d at 575 (officer's treatment of hearing-impaired arrestee indicated intentional discrimination where officer continued to speak quickly and yell at arrestee despite knowledge of his hearing impairment and obvious inability to understand the officer's words); *cf. Pagan-Negron v. Seguin Independent Sch. Dist.*, 974 F. Supp. 2d 1020, 1029-30 (W.D. Tex. 2013) (principal did not intentionally discriminate against student with speech impairment by removing student from classroom where student's disruptive outburst—throwing his belongings at other students—was not related to his speech impairment).

As a final matter, because Plaintiff's teacher was employed by the School Board during this time, the School Board may be held vicariously liable for her alleged discriminatory acts pursuant to the ADA and the RA. *See Delano-Pyle*, 302 F.3d at 575

Based on the foregoing, the Court finds that Plaintiff has sufficiently stated a cause of action under both the ADA and the RA. Defendant's Motion to Dismiss these claims is denied.

B.     **Municipal Liability under § 1983**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, custom, or usage . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws, shall be liable to the party injured." 42 U.S.C. § 1983.  To state a claim under section 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Lauderdale v. Texas Dep't of Criminal Justice,* 512 F.3d 157, 165 (5th Cir. 2007) (internal quotation marks and citation omitted).  "[A]llegations of callous indifference are sufficiently within the ambit of purposeful acts to state a claim of constitutional deprivation under § 1983." *Lopez v. Houston Indep. Sch. Dist.,* 817 F.2d 351, 355 (5th Cir. 1987) (overruled on other grounds).

"Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998) (noting that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable [for purposes of § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."). Consequently, "[t]o establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken pursuant to an official municipal policy." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citation and internal quotation marks omitted). To this end, "[a] plaintiff must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that

9

policy or custom." *Id.* at 541–42 (citation and internal quotation marks omitted). The plaintiff must also "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997).  Municipalities and other local governmental units, including school boards, "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690-91.

Plaintiff seeks recovery pursuant to section 1983 on the theory that the School Board, "as a local governing body, is . . . liable for damages stemming from the enforcement of its non-corporal punishment policy, practice, and/or custom" as allowed by *Monell*. (Amended Complaint, ¶ 17).  Plaintiff appears to allege that the School Board has acted with "deliberate indifference" to her daughter's rights under federal law by failing to timely respond to complaints regarding Ms. Soreta's violation of this corporal punishment policy.

To succeed on her Section 1983 claim, Plaintiff will ultimately have to "show some evidence to support that an official policy of the [School Board] was the moving force behind" the violation of C.L's constitutional rights. *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 850 (5th Cir. 2009).  The Amended Complaint does not adequately allege that the School Board has such a policy.  At most, Plaintiff alleges that the School Board had a "non-corporal punishment policy, practice, and/or custom" that prohibited the alleged conduct of Ms. Soreta and that Ms. Soreta violated that policy. (Amended Complaint, ¶17).

Despite having had an opportunity to amend her Complaint, Plaintiff does not allege that the School Board had in place either an explicit or implicit policy, practice, or custom of allowing its employees to verbally and physical abuse special needs children.  That an employee of the School Board violated a non-corporal punishment policy is insufficient to establish that the

10

School Board had an implicit policy, practice, or custom of *allowing* teachers to violate its own non-corporal punishment policy.  Holding the School Board liable on the basis of an employee's violation or non-enforcement of this policy would amount to prohibited vicarious liability based on the acts of a School Board employee. *See Monell*, 436 U.S. at 690.  Even if the principal knew or should have known that the School Board's non-corporal punishment policy was being violated, Plaintiff has not demonstrated that the principal is a policymaker for the purpose of the instant Section 1983 claim. *See Washington v. E. Baton Rouge Parish Sch. Bd.*, No. 2011-1703, 2012 WL 1744466 (La. Ct. App. 1st Cir. May 14, 2012) (*citing Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1251 (5th Cir. 1993)).

Furthermore, Plaintiff has failed to allege facts demonstrating that the School Board was deliberately indifferent to the constitutional rights of Plaintiff and her daughter.  Plaintiff alleges that she was advised of the physical and verbal abuse of October 31, 2013. (Amended Complaint, ¶ 4).  She further alleges that the abuse to her child, and other special needs children, "had been going on for quite some time" and the principal's "indifference" to earlier complaints led to the video tape evidencing the abuse. (Amended Complaint, ¶ 8).  These vague and conclusory allegations, without more, fail to provide context to support a plausible claim for relief on the theory of deliberate indifference by the *School Board* to Ms. Soreta's actions. Plaintiff does not allege the facts and circumstances concerning the alleged previous abuse; identify when the School Board would have been put on notice of this abuse before October 31, 2013; or provide any information regarding the School Board's reactions to the alleged previous abuse. Plaintiff pleads no facts showing that the School Board knew its responses to the alleged incident created an obvious and substantial risk of recurring abuse; the teacher was put on administrative leave one to two days after the School Board received notice of the alleged abuse; and there is no allegation of any additional incidents before or after the Board's response.

In short, Plaintiff has only provided general and conclusory allegations that the abuse had been "going on for quite some time." The allegations in the Second Amended Complaint fail to state a claim of deliberate indifference by the School Board to any violation of the Plaintiff's constitutional rights.

Plaintiff further alleges that the School Board was negligent in hiring Ms. Soreta as a special needs teacher and in its failure to properly train Ms. Soreta with dealing with special needs children. (Amended Complaint, ¶ 14). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359-60 (2011). For a municipality to be held liable for failure to train its employees in a relevant respect, the failure must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 388 (U.S. 1989)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id*. "A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities," which is not allowed pursuant to Section 1983. *Id* (citations omitted). In this context, "deliberate indifference generally requires that a plaintiff demonstrate 'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson*, 245 F.3d at 459).

The Amended Complaint merely offers conclusory allegations regarding the School Board's alleged negligent hiring and training of Ms. Soreta. Plaintiff has simply not alleged that

12

the School Board had in place any policy or pattern of inadequate hiring and training of principals and/or special needs teachers, much less that the School Board was aware of any alleged inadequacy or that any such training has resulted in mistreatment of other special needs children.

Based on the foregoing, Plaintiff cannot has failed to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983.

### C. Remaining State Law Claims

Assuming that Plaintiff's federal causes of action would be dismissed, Defendant summarily argues that Plaintiff "has failed to establish any facts to support liability on the part of the School Board, and all claims should be dismissed in their entirety." (R. Doc. 26-1 at 7). No further argument is offered. Because Defendant has failed to sufficiently develop its argument with respect to Plaintiff's state law claims, the Court denies Defendant's Motion to Dismiss Plaintiff's causes of action under state law.

## III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED in part and DENIED in part.** Plaintiff's cause of action pursuant to 42 U.S.C. § 1983 fails to state a claim upon which relief can be granted, and is hereby **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on October 22, 2015.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE